OF

## The State of Missouri

AT THE

### OCTOBER TERM, 1883.

(*Continued from Volume* 79.)

---

LEMMON v. HARTSOOK, *Appellant.*

80   13
146  294
80   13
a155 299

1. **Lost Quarter Section Corner.** To establish a lost quarter section corner of an interior section, the rule is to ascertain the corners of the section on that side, and a point on the line connecting them and equi-distant from them will be the lost corner. See *Coe v. Griggs*, 79 Mo. 35.

2. **Division Lines Fixed by Act of Parties:** ESTOPPEL. Where one of two adjoining proprietors, for the purpose of enabling the other to locate a division fence, pointed out a line as the true divid-

ing line between them, and the latter, relying upon this information, built the fence and made other improvements up to this line; *Held*, that as against him a grantee of the former proprietor was estopped to deny that this was the true line.

But where the parties agreed upon a line, neither knowing the true line and each intending to fix upon it, and each acting on the best information he could get and not relying wholly on the other; *Held*, that there was no estoppel.

3. **Description of Land**: EJECTMENT : PETITION : VERDICT : WRIT OF POSSESSION. A petition in ejectment to recover a strip of land lying on the dividing line between plaintiff and defendant, described the strip as "the south half of the south half of the southwest quarter of the northwest quarter of section 24, township 50, range 21, in Saline county." The verdict was, "We, the jury, find for plaintiff, and designate a line " (describing it) "as the true line between plaintiff and defendant," and the judgment followed the verdict. *Held*, that the description in the petition was sufficient; that the verdict might have stopped at a finding for the plaintiff, but was not vitiated by the explanatory matter referring to the dividing line ; and that a writ of possession based on this verdict and judgment sufficiently informed the officer executing it what land it was his duty to place the plaintiff in possession of.

4. **Evidence in Ejectment**; DECLARATIONS OF GRANTOR OF A PARTY. In ejectment for a strip of land lying on the dividing line between plaintiff and defendant, defendant had offered evidence of acts and declarations of plaintiff's grantor, since deceased, tending to fix the line as claimed by defendant. Plaintiff, in rebuttal, offered evidence of declarations to the contrary made by his grantor while in possession. *Held*, that this latter evidence was competent.

*Appeal from Saline Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*Wallace & Chiles* for appellant.

*Davis & Willis* for respondent.

EWING, C.—This is a suit in ejectment to recover the south half of the south half of the southwest quarter of the northwest quarter of section 34, township 50, range 21. The petition is in the usual form. The answer is: 1st, A general denial; 2nd, That when the defendant bought and

took possession of this land one Sarah Jeffries was the owner of the land now in controversy, and resided on the same; that she is plaintiff's grantor; that she and her agents pointed out to defendant a line between them as the true line; that defendant then built his fence thereon with her consent; that he has ever since owned and cultivated and claimed his said land to extend to said line; that said Sarah Jeffries agreed that said line should be the true line between them; and that, with her knowledge and without her objection, defendant made valuable improvements thereon; 3rd, That by acts and agreement of said Sarah Jeffries she and her grantees are now estopped from denying this line and claiming any land beyond it.

It was agreed on the trial that the parties claimed title from a common source, one Asa Finley. Plaintiff then introduced N. B. Ross, the county surveyor of Saline county, who testified that he surveyed the land for Albert Sims, and said: "I found no remains or evidence of the northwest corner of section 24, nor any quarter section corner established by the government on the west or east line of the section, nor any center corner to said section 24; most of the government corners on said section were established. I first established a monument at the northwest corner of said section, by running a line from the southwest corner of section 24, where I found a stone corner, said to have been placed there by Duggins, a former surveyor; two miles north to the northwest corner of section 13, where I found a government corner, said to be placed there for the northwest corner of section 13; then I corrected the line back; I then commenced at the northwest corner fractional section 23, where I found a stone said to be a government corner and ran east two miles to the northeast corner of section 24 and found government corner, the stump of a bearing tree, and corrected back; I then located the northwest corner of section 24. I had two methods for locating a lost section corner; one was to have placed it at the intersection of the two lines I thus run; and the other is to

subdivide the north and south line and locate it at the middle point. By which one of these methods I located said corner, I do not know. I then established the quarter section corner on the west line of said section 24 at a point equi-distant from the southwest corner of said section and the northwest corner as established by me in this survey; the quarter section corner thus established is south of Mr. Hartsook's fence that runs between him and Lemmon, but I don't know the distance; in running the east and west and north and south lines to establish the lost section corner to the northwest of section 24, I ran each line the length of two miles, and on these lines I found no government monuments, or those of any other surveyor, and of course was governed by none, only those from where I started and ended the lines; I found a stone by the side of Mr. Hartsook's fence on the west line of section 24, but it was so far out of the way I did not recognize it as a corner; I made several attempts to survey this quarter section, some three times, and placed the corner nearly at the same place each time; my instrument was out of fix, and I sent it off and got another one which I used the last time; I also established a corner at the center of section 24, as shown in my plat, and from this center corner I ran a line west to the quarter section corner established on the west line of said section, and this last line run divides the land of Lemmon and Hartsook."

Plaintiff then introduced.Thomas Elliott, a former surveyor of Saline county, whose evidence tended to corroborate that of Ross, and other evidence tending to show that the corner fixed by Ross was the correct one.

Dennis H. Hartsook testified in his own behalf substantially that he bought his land in 1869; that Mrs. Jeffries then lived on the land adjoining him now in controversy; that there was no division fence between them; that in the spring of 1870 he told her he wished to build a fence, and she sent her son to show him the line, which he did, and where he thus built the fence; that he also showed defend-

ant where Alexander established the center of the section; that the corner established by Ross is a considerable distance south of this, and that afterward he planted an orchard and made improvements on the land. Defendant then offered a petition for change of road signed by Mrs. Jeffries and others, and a plat of the survey, as follows:

Defendant introduced Thomas C. Duggins, who testified he was at one time county surveyor of Saline county, and as such had "established the southwest corner of section 13, which is also the northwest corner of section 24, by running a line from the southwest corner of section 24, north to the quarter section corner on the west line of section 13; government corners at both ends of this line being known at that time; corrected back, divided up this line run by me in proper proportions, and set corner to sections 13, 14, 23 and 24.

Plaintiff then offered rebutting evidence, tending to impeach the testimony of the defendant in relation especially to his statement that Mrs. Jeffries' son had shown him the dividing line.

There was conflicting evidence as to the acts of Mrs.

2—80

Jeffries and her statements concerning the dividing line, but this was substantially the testimony in the case.

The court then gave instruction number one for the plaintiff, as follows:

I. Section 24, township 50, range 21, within which the land in dispute is situated, is a section recognized by law as an interior section, and in such sections the legal rule for establishing lost quarter section corners is to establish the same at a point equi-distant from the corresponding corners of the section; and the true location of the southwest corner of the land claimed by plaintiff is at a point half way between the southwest corner and the northwest corner of said section 24; and the true line between the west half of the northwest quarter and the west half of the southwest quarter would be a straight line between said point last mentioned and a point on the east line of said section, equi-distant from or half way between the northeast and southeast corners of said section, provided the quarter section corner on the east line of said section 24, as established by government, is also shown to be lost.

The appellant insists that this instruction ought not to have been given, because it is misleading and erroneous, and there is no evidence upon which to base it. It attempts to lay down the rule by which lost quarter section corners may be established. The evidence at least tends to show that the true location of the southwest corner of the land claimed by plaintiff is at the place specified in the instruction, and the evidence is sufficient upon which to base it; provided it is the true and legal mode for ascertaining the lost quarter section corners.

The land in controversy is in a section recognized by law as an interior section. The laws of the State, (R. S., § 7403,) prescribe the mode of ascertaining lost corners, and it is upon this statute the appellant has attempted to base his fourth instruction, and insists the judgment must be

reversed because of its refusal. But the learned counsel for the appellant seems to have altogether overlooked the fact that the laws of the United States and the regulations thereunder prescribe and fix the manner of establishing lost quarter section corners, both interior and exterior. The 1st section of the act of congress, (3 U. S. Stat. at Large, 566,) amongst other things, provides: "And the corners and contents of half quarter sections　*　*　shall be ascertained in the manner　*　*　prescribed by the 2nd section of an act entitled ' an act concerning the mode of surveying, etc.,' " (2 U. S. Stat. at Large, 313,) " and fractional sections shall, in like manner,　*　* be subdivided　*　*　under such rules and regulations as may be prescribed by the Secretary of the Treasury." These regulations were prescribed, (1 Lester's Land Laws and Regulations, 722,) and provide that "quarter section corners both upon north and south and east and west lines are to be established at a point equi-distant from the corresponding section corners." This rule applies to interior corners. To the exterior corners on the north and west boundaries of township lines a different mode is prescribed. Manual of Surveying Instructions, p. 26. Again, this court, in *Knight v. Elliott*, 57 Mo. 317, held that "in interior sections, corners are always established, where the original corners cannot be found, at a point equi-distant from the corresponding corners of the section." In that case it was also held that these regulations of the land department, under the statutes of the United States, did not conflict with the statutes of this State, (R. S., 7402,) but if there was a conflict the former are paramount and must govern. In the light of these authorities the fourth instruction asked by appellant, was properly refused. *Frazier v. Bryant*, 59 Mo. 121.

II. The court, of its own motion, gave the following instruction: " If the jury believe that the line between

plaintiff and defendant was the east and west line in the middle of section 24, that the half mile or quarter section corners on both the west and east lines of section 24 were lost, and that the location of said line between plaintiff and defendant was not known, and further believe that when defendant was about to make his fence dividing the lands of plaintiff and defendant, he, defendant, called on Mrs. Jeffries, plaintiff's grantor, for information as to the location of the true line, and she, or her son by her authority, went with defendant onto the ground and showed and pointed out the line, knowing that defendant was about to erect his fence on said line, and further believe that defendant relying on the information thus given him by Mrs. Jeffries or her son, built his fence, and with the knowledge and acquiescence of Mrs. Jeffries, also, subsequently planted out a hedge fence on or near said line, and also a row of apple trees on the strip in dispute, and after all this some years elapsed before the bringing of this suit, plaintiff is now estopped from asserting any other line as the true line. But if the jury shall believe that neither defendant nor Mrs. Jeffries knew the correct location of the true line and that they both, in error, thought the line on which defendant made his fence was the true line, and both were aiming and intending to fix on the true line, and both, in mistake, acting on the best information respectively they had, or could obtain, defendant not wholly relying on the acts or declarations of Mrs. Jeffries or her son, then, in such case, any improvements made by defendant were made at his own risk, and plaintiff is not estopped from asserting claim to the true line when found or ascertained."

This instruction, and the first given for the defendant and the second and third asked by the defendant and refused, presented substantially the same questions, for the consideration of the jury; and if found to be true by the jury, as alleged by defendant and presented by the instructions, would result in and amount to an estoppel *in pais*. But the evidence was conflicting; that on the part of the de-

fendant tending to show that Mrs. Jeffries' agent pointed out the line to defendant, that he built his fence thereon and made improvements with her knowledge and consent. The evidence for plaintiff tended to prove that Mrs. Jeffries did not have the line pointed out, but on the contrary, notified the defendant that he was not fencing on his line, etc. These were facts upon which it was the province of the jury to pass; and having found them for the plaintiff, this court cannot interfere. The court below committed no error, therefore, in refusing the defendant's second and third instructions.

III. It is insisted that the petition is defective and does not state facts sufficient to constitute a cause of action; that the judgment on such petition and writ of possession would not inform the officer executing the writ "what land it was his duty to put the plaintiff in possession of." It will be seen that the plaintiff sues for the south half of the south half of the southwest quarter of the northwest quarter of section 24, township 50, range 21, in Saline county. The judgment was "that plaintiff recover of defendant the possession of the land in the petition described, to-wit"—and describing the land in the judgment. The judgment then goes on—"and that execution issue to restore the possession of said land or so much thereof, not further south than the boundary line in said verdict described, as said defendant shall be found in possession of at the time of the execution of said writ." The verdict of the jury was as follows: "We, the jury, find for the plaintiff, and designate a line beginning at a point equi-distant between the southwest and northwest corners of section 24, and running east on the line as surveyed and located by Mr. Ross to the corner established by Mr. Ross, as the true line between plaintiff and defendant, and assess no damage or rental against defendant." This judgment and verdict are more specific than necessary. The judgment might have stopped

when it decreed that plaintiff recover the land sued for in the petition, describing it. The verdict would have been sufficient when finding for the plaintiff. The other parts of the verdict and judgment are simply explanatory, and do not change the rights of the parties. In *Livingston Co. v. Morris*, 71 Mo. 603, cited by appellant, the description of the land was so vague it could not be identified: "All that part of the east half of the northwest quarter of the southwest quarter section 20, township 57, range 24, containing sixteen acres, more or less," is unintelligible. It could not be identified. Tyler on Eject., pp. 580, 582. The verdict here was for all the land claimed by the plaintiff, but the jury goes further than necessary and describes the dividing line. It does not vitiate the verdict. *Clay v. White*, 1 Munf. 162.

IV. The court did not err in admitting the statement of Mrs. Jeffries in evidence. She was the owner and in possession of the land at the time the declarations were made and has since deceased. 1 Greenleaf Ev., § 109, and authorities cited in note b; also *Hunnicutt v. Peyton*, 102 U. S. 333; *Darrett v. Donnelly*, 39 Mo. 493; *State to use, etc., v. Schneider*, 35 Mo. 533; *Burgert v. Borchert*, 59 Mo. 80. See note to *Deming v. Carrington*, 30 Am. Dec. 595; *s. c.,* 12 Conn. 1.

In the state of Massachusetts where this subject has been much discussed, it is held that to be admissible such declarations must be made by persons in the possession of land, and in the act of pointing out their boundaries. *Bartlett v. Emerson*, 7 Gray 174; *Daggett v. Shaw*, 5 Metc. 223; *Long v. Colton*, 116 Mass. 414. The declaration derives its force from the fact that it accompanies and qualifies an act and is thus a part of the act. *Bender v. Pitzer*, 27 Pa. St. 333. The weight of authority seems to be that in questions of private boundary declarations of particular facts as distinguished from reputation, are admissible in evidence

when made by persons in possession of the land when the declarations are made, or who are on the land at the time, and are shown to have knowledge of that whereof they speak. 102 U. S. 333. Under these rulings we hold the declarations of Mrs. Jeffries admissible in this case. The declarations objected to were as follows: Mrs. Jeffries " told witness that Hartsook was building his fence on her land; said she had repeatedly told him;" and also " that Mrs. Jeffries said she had her land surveyed and knew Hartsook was over the line." This was brought out in plaintiff's rebutting evidence.

The judgment of the court below is affirmed, all concurring.