## G. B. NYSTROM v. JOHN LEE.

Opinion filed Dec. 30, 1907.

**Boundaries — Resurveys — Procedure.**

1. Resurvey of lands must be in accordance with the laws of the United States and the instructions issued by the officers thereof in charge of the government land surveys. Rev. Codes 1905, section 2540.

**Same — Quarter Section Corners.**

2. The official instructions to United States surveyors for locating and relocating quarter section corners on interior sections require them to be established equidistant from section corners. Hence, in absence of other evidence, when one corner and the quarter corner are found, the lost section corner will be presumed to have been located the same distance from the quarter corner as the latter is found to be from the existing corner.

**Same — Location of Section Corners — Presumptions.**

3. When the northwest, northeast, and southwest corners of an interior section and the west and north quarter corners are found or established, and a point on a line run one mile due south from the northeast corner of the section is found to be just one mile east of the southwest corner, such point, in the absence of conflicting evidence, will be presumed to be the original southeast section corner, and the points midway between that point and the established corners the south and east quarter corners.

**Same — Evidence — Harmless Error.**

4. The rejection of certain evidence *held* to be error without prejudice under the circumstances of this case.

Appeal from District Court, Nelson county; *Fisk, J.*

Action by G. B. Nystrom against John Lee. Judgment for defendant and plaintiff appeals.

Reversed.

*Skulason & Skulason,* for appellant.

By practical settlement and location, parties may compromise a disputed boundary line. Lecomte v. Toudouze, 17 S. W. 1047; Cox v. Dougherty, 36 S. W. 184; Simmons v. McInney, 63 S. W. 92; Brummel v. Harris, 63 S. W. 497; Hills v. Ludvig, 24 N. E. 596; Clayton v. Feig, 54 N. E. 149; Hastings v. Stark, 36 Cal. 122; St. Bede College v. Weber, 48 N. E. 165; Miller v. Mills Co., 82 N. W. 1038; Sherman v. Hastings, 46 N. W. 1084; LeCompte v. Lueders, 51 N. W. 542; Flynn v. Glenny, 17 N. W. 65; Evans

v. Kunze, 31 S. W. 123; Jones v. Pashby, 35 N. W. 152; Smith v. Hamilton, 20 Mich. 433; Jacobs v. Moseley, 4 S. W. 135.

In a dispute regarding a boundary line, any evidence which it is competent to use to prove a fact, is admissible. Radford v. Johnson, 8 N. D. 182, 77 N. W. 601; Gwynn v. Schwartz, 9 S. E. 880; Scott v. Yard, 33 S. W. 588; 5 Cyc. 930, 939; Coy v. Miller, 47 N. W. 1046.

All ascertained surrounding monuments shall have their due weight in determining the unascertained. Lemmon v. Hartsock, 80 Mo. 13; Frazier v. Bryant, 59 Mo. 121; Knight v. Elliott, 57 Mo. 317.

Unauthorized entry upon another's land is trespass. 28 Am. & Eng. Enc. Law, 551; Bouvier's Law Dictionary; 28 Am. & Eng. Enc. Law, 552; 3 Blackstone's Commentaries, 210; Pfeifer v. Grossman, 15 Ill. 53; Arneson v. Spawn, 49 N. W. 1066.

*M. A. Shirley* and *Scott Rex,* for respondent.

Original government monuments control; in their absence, their former location, if it can be definitely determined. Radford v. Johnson, 8 N. D. 182, 77 N. W. 601; Beltz v. Mathiowitz, 75 N. W. 699; Black v. Walker, 7 N. D. 414, 75 N. W. 787; Dowdle v. Cornue, 68 N. W. 194; Randall v. Burke Twp., 57 N. W. 4.

In their absence resort must be had to government field notes, starting from the nearest known government monuments. Beltz v. Mathiowitz, supra; Black v. Walker, supra; White v. Amrhien, 85 N. W. 191; McCray v. Elevator Co., 91 N. W. 457.

That a disputed boundary has been fixed by agreement or acquiescence must be shown by proof clear and convincing. Beardsley v. Crane, 54 N. W. 740; Cronin v. Gore, 38 Mich. 381; McKey v. Hyde Park, 37 Fed. 389; Dauer v. Hildebrandt, 68 N. W. 145.

Such acquiescence must be for the period of time fixed by the statute of limitations. Buchanan v. Ashdown, 24 N. Y. Supp. 1122; 5 Cyc. 942; Corning v. Troy Iron Works, 44 N. Y. 577.

SPALDING, J. The plaintiff is owner of the N. E. ¼ of section 27, in township 149 N., of range 57 W., in Nelson county, and the controversy in this case arises over the lines dividing the plaintiff's land from the S. E. ¼ owned, and the N. W. ¼ of the same section occupied, by the defendant. The action is brought for damages for trespass upon strips along the south and west sides, claimed by plaintiff to be a part of the N. E. ¼, and there-

fore belonging to him, but occupied some years by the defendant. One Gjedestad, the county surveyor of Nelson county, testified that at the request of the plaintiff he made a survey of the section; that after some preliminary surveying he found a government monument at the northwest corner of the section, and that one-half mile east and the same distince south of that monument he found government quarter section mounds. He testified that at the northeast corner of the section there had been a round slough, and there was a graded road running north and south on the east section line through this slough, but no grade east and west at that point. He found monuments on two sides of what had been this slough. He says: "I found at the northeast corner of the section what I thought or supposed was the section corner post or stone. There was one mound at the east side of the slough and one on the west side of it, so I had to start between them on the grade—half way between them. I thought they were original government mounds." An extension of the east and west line, east from the north quarter section monument one-half mile, brought him to this point exactly midway between these two mounds, and in the middle of the road. All other mounds were obliterated, and could not be found. He established the southwest corner of the section by extending the west line between the two monuments found on that line, one-half mile south of the west quarter monument. He located a point one mile east from the west quarter monument, and extended through that point a north and south line one mile south from the northeast corner, and from the south end of this north and south line, west to the southwest corner, he testified was one mile. He located the center of the section by running one-half mile south from the north quarter corner, and the same distance east from the west quarter corner, and west from the middle of the east line. He testified that he measured all the sides of each of the quarter sections, except on the south side of the section, and found them each one-half mile. The south line he did not divide, but it was one mile in length. After testifying as to the methods and means used to locate these lines and subdivide the section, and that he did not have the field notes of the government survey, but relied upon the monuments referred to, he was asked, "Now, how does that line running east and west divide the section, into what portions?" and the court sustained the defendant's objection to this question. He was later asked: "Now, how does this line that you

established, running east and west to the center of the section, or thereabouts—how does it divide the section as to fractions north and south?" An objection to this question was sustained, and he was not allowed to answer. During the trial the plaintiff offered to show by witness Gjedestad, that the line which he ran and established, from the government monument in the center of the west line of the section in question due east, subdivided the east half of the section into equal parts, so as to make 160 acres in the northeast quarter and 160 acres in the southeast quarter. The defendant objected to this proof, and the court sustained the objection. Proof was offered to show the amount expended by the plaintiff in surveying these lines, and defendant's objection to such proof was sustained. The court also sustained an objection to proof showing the value of the use of the land in dispute during the time the defendant occupied it, and also to an offer to show the rental value. These rulings of the court are each assigned as error. Testimony was given in an attempt to show acquiescence in the line established by the surveyor. At the close of the plaintiff's case both parties rested, whereupon the defendant made a motion for a directed verdict on the ground that no case had been made by the plaintiff, and the motion was granted, and on the direction of the court a verdict was returned for the defendant, upon which judgment was entered in his favor. From this judgment the plaintiff perfected this appeal.

In addition to the errors specified, which we have mentioned, error is assigned in the granting of the defendant's motion for a directed verdict, and in entering judgment dismissing the action. The courts of this state in matters of this kind are governed by the laws of the United States, and the instructions issued by the officers thereof, in charge of the public land surveys. Rev. Codes 1905, section 2540. Section 2395, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1471], among other things, provides that the public lands shall be divided by north and south lines run according to the true meridian, and by others crossing them at right angles, so as to form townships of six miles square; that "the corners of the townships must be marked by progressive numbers from the beginning; each distance of a mile between such corners must also be distinctly marked with marks different from those of the corners;" that "the townships shall be divided into sections containing as nearly as may 640 acres each, by running through the same each

way parallel lines at the end of every two miles, and by making a corner on each of such lines at the end of every mile." It will be seen from this that the interior sections are required to be one mile square, and we think the court is justified in presuming, in the absence of evidence to the contrary, that they are so established. In the case at bar this presumption is strengthened by the fact that the north and west quarter section corner monuments were found to be each one-half mile from the established monument at the northwest corner of the section. It is further strengthened by the fact that, on extending the northern boundary line east from the quarter monument one-half mile, it was found to end at a point in the middle of the highway equidistant from the two mounds on the east and west sides of the ancient slough, and that the line running south from this point terminated one mile east of the southwest corner, thus making the three corners, on which none of the original monuments could be found, correspond with the location of the monuments before referred to, and each side of the section one mile in length. It is conceded that, in all cases where the location of the original monuments can be ascertained, they must control, and that the object of the resurvey is to locate, if possible, the original monuments. It is also well established that, in proving the location of lost or obliterated monuments, any evidence may be used which tends to establish the location of such monuments. 5 Cyc. 956. The testimony of the witnesses who have seen them and remember their location is competent. The use of the field notes made on the original survey is likewise competent, and, when used, they have the force of a deposition made by the surveyor. Although they would have been competent evidence, we do not consider the field notes as necessary evidence in this case. White v. Amrhien, 14 S. D. 272, 85 N. W. 191; Randall v. Burke Township, 4 S. D. 337, 57 N. W. 4; Radford v. Johnson, 8 N. D. 182, 77 N. W. 601; Dowdle v. Cornue, 9 S. D. 126, 68 N. W. 194; Neary v. Jones, 89 Iowa, 556, 56 N. W. 675.

Rule No. 147 of the Manual of Surveying Instructions, issued by the United States General Land Office, requires that in making surveys of public lands quarter section corners, both upon the meridional and latitudinal section lines, be established at points equidistant from the corresponding section corners, except (here follow exceptions which have no application to interior sections). The

instructions issued by the General Land Office March 14, 1901, re-garding the re-establishment of interior quarter section corners, say: "The missing quarter section corner must be re-established equidistant between the section corners marking the line according to the fields notes of the original survey." We take this to mean that, when the section corners on any side of the section are found or located, the quarter corner must be placed midway between them. Conversely, it must be true that, when the northwest corner of an interior section and the quarter corner on the north line are found or located, and they are found to be one-half mile apart, the northeast corner of the section must at least be presumed to be one half mile east of the quarter corner, and the same rule must apply to the southwest corner of the section, when, as in this case, the northwest corner and the west quarter corner are one-half mile apart. If this rule is correct, as we think it must be, then, when the surveyor ran the east line one-half miles south from the northeast corner which he had established, and a line between that point and the quarter monument on the west line was found to be one mile in length, it must at least furnish prima facie evidence of the location of the original corners and boundaries. We think the evidence on this point was competent, and that the plaintiff did not have to resort to every known test to ascertain the correctness of the survey. It is held in several states that lost quarter posts should be relocated at equal distances between the section corners. Hess v. Meyer, 73 Mich. 259, 41 N. W. 422; Frazier v. Bryant, 59 Mo. 121; Knight v. Elliott, 57 Mo. 317; Lemmon v. Hartsook, 80 Mo. 13. A line marked part of the distance must be followed in the same direction for the whole distance unless there is some marked corner to divert it. Thornberry v. Churchill, 4 T. B. Mon. (Ky.) 29, 16 Am. Dec. 125; George v. Thomas, 16 Tex. 612, 67 Am. Dec. 612, and cases cited. Where boundaries and termini are is a question for the jury. Doe v. Paine, 11 N. C. 64, 15 Am. Dec. 507; Comegys v. Carley, 3 Watts (Pa.) 280, 27 Am. Dec. 356.

There was much more testimony showing how the surveyor verified his measurements and the points which he located. It all sufficed to show clearly that he had, as we have indicated, established the four corners of a tract of land one mile square, and the only question to be determined is whether this evidence sufficed to make a prima facie case for the plaintiff. The witness who testified had

been county surveyor for five years. Nothing appears to indicate that he was incompetent as a surveyor; but his use of the English language was quite imperfect, and the expressions used by him in testifying as to the location of the corners, it appears clear to us, meant more than the bare words indicated. His positive opinions were expressed in language peculiar to foreigners of some nationalities, who seldom use words indicating positiveness. Although, in our consideration of this matter thus far, we have assumed that he did not find, except by extending the north line east from the quarter mound, the northeast corner of the section, yet we are satisfied that the point regarding which he testifies, located in the middle of the grade of the road and midway between the two mounds, was the northeast corner of the section, and that he meant to be understood as giving his opinion that it was the original section corner which he found there. Old mounds, pits and stakes, having the appearance of government mounds, may be considered by the court and jury in determining whether or not they are the original government corners. If they are indistinct and the marking obliterated, but are found at points where they should have been located, they may furnish valuable evidence, while, if some distance from where it appears they should have been located, they furnish less valuable evidence of the original location of the corners. In this case there is no evidence of any corners, mounds or stakes, except at exact points where the measurements and extensions of known lines indicate they should be to conform to the law and the rules regarding the location of corners, and all the evidence in the case corroborates the testimony of the surveyor, although, as we have indicated, his language was somewhat ambiguous in locating these corners, and establishing the fact that such locations were original section or quarter corners. Hanson v. Red Rock, 4 S. D. 358, 57 N. W. 11.

We see no merit in the assignments of error on the rejection of the evidence regarding the relative portions into which these lines divided the section, because it is clear from the evidence received that the tract of land outlined was divided by this survey into four equal quarters, so, if it was error to sustain the objections to this testimony, the only purpose of which must have been to make it more clear and distinct to the jury, it was error without prejudice. We see no ground for complaint that evidence was not received showing the cost of the survey, as we are unable to find

any statutory provision for apportioning the cost; but the plaintiff, having made a prima facie case, should have been allowed to show damages from the use of his land by the defendant. The land so used was a strip on the west side of the N. E. ¼, 171 feet wide at the center of the section and tapering to a point at the north quarter monument, and another strip about ten feet wide at the center of the section and about twelve feet wide at the east end, on the south of the northeast quarter, as well as a small strip used for a road. The evidence showed that the defendant was present for brief periods when the survey was being made, and indicated to the surveyor that he acqiuesced in the result. No agreement between the parties is shown that the lines established by the surveyor should stand as their division lines; but it is argued that in his acquiescence and in his conversation with the surveyor, and the fact that a short time before this survey was made, and after a preceding survey by another surveyor, who had located the lines in practically the same place, he had moved his fence to correspond with the lines, constitutes such acquiescence as to be binding on the defendant. We are of the opinion that this point is not well taken. It requires acquiescence in a survey of this kind for a much longer period than is shown in the case at bar. Some cases hold that recognition of the lines for a considerable period, although less the period which would be a bar under the statute of limitations, is sufficient to estop a party. Cavanaugh v. Jackson, 91 Cal. 580, 27 Pac. 931. Other authorities hold it insufficient unless for the statutory time. However, it is unnecessary in this case to decide how long this time should be, as we find no facts disclosed which, in our opinion, warrant holding the defendant bound by his acts in the premises.

We are of the opinion that the plaintiff made a prima facie case, and that the court erred in directing a verdict for the defendant. If the defendant was able to submit evidence showing that the surveyor had been in error in his measurements or in identifying the corners, he should have offered it; but on a directed verdict the evidence of the opposite party is to be taken as undisputed, and is entitled to the most favorable construction that it will properly bear, and he is entitled to the benefit of all reasonable inferences arising from his testimony. Pirie v. Gillitt, 2 N. D. 255, 50 N. W. 710.

The judgment of the district court is reversed, and a new trial granted, for the purpose of assessing such damages as plaintiff may show himself entitled to recover. All concur.

FISK, J., disqualified, and HON. CHAS. A. POLLOCK, judge of the Third judicial district, sat by request.